Zilian D. Rumberger, Petitioner *v.* Commonwealth of Pennsylvania, Department of Justice, Respondent.

Argued February 5, 1979, before Judges ROGERS, DiSALLE and MacPHAIL, sitting as a panel of three.

*A. Charles Peruto*, with him *Burton A. Rose* and *Peruto, Ryan & Vitullo*, for petitioner.

*David Max Baer*, Deputy Attorney General, with him *Norman J. Watkins*, Deputy Attorney General, and *Gerald Gornish*, Acting Attorney General, for respondent.

OPINION BY JUDGE ROGERS, April 11, 1979:

Zilian D. Rumberger, in this his appeal from an order of the State Civil Service Commission, has raised the single issue of whether the evidence adduced at the Civil Service Hearing was sufficient justification for his dismissal from the classified service of the Commonwealth. The Commission made the legal conclusion that the removal of petitioner from his position as Drug Control Director, regular status, was for just cause under Section 807 of the Civil Service Act,[1] and that the action was not discriminatory under Section 905.1 of the Act.[2]

We must determine whether a necessary finding of fact is not supported by substantial evidence, that is, relevant evidence which a reasonable mind, not weighing the evidence or substituting its judgment thereon for the Commission's, might accept as adequate to support a conclusion. *Philadelphia County Board of Assistance v. Cahan*, 24 Pa. Commonwealth Ct. 543, 358 A.2d 440 (1976). After carefully reviewing the 600 page transcript and the numerous exhibits, we are satisfied that the record contains acceptable

---

[1] Act of August 5, 1941, P.L. 752, *as amended*, 71 P.S. §741.807.

[2] Added by Section 25 of the Act of August 27, 1963, P.L. 1257, 71 P.S. §741.905a.

relevant evidence supporting the Commission's necessary findings.

Mr. Rumberger was Director of the Bureau of Drug Control, one of three units of the Office of Drug Law Enforcement, in the Department of Justice. The head of the Office of Drug Law Enforcement and therefore Mr. Rumberger's immediate superior was Special Deputy Attorney General Joseph Reiter. The acts of misconduct described in the Commission's findings of fact, which closely parallel the charges made in the appointing authority's removal letter provided the appellant, are all related to three central incidents. Both parties have referred to these as: the Danny Joe coverup; the Hopson allegation; and the Anonymous Letter. The testimony of Deputy Attorney General Reiter and others concerning the Danny Joe matter was to the effect that a subpoena out of the Court of Common Pleas of Chester County sought Bureau records and information concerning the whereabouts of one Daniel Joseph, a Bureau informant, and his relationship to the Bureau. On October 15, 1976 an Assistant Attorney General exhibited the subpoena to Mr. Rumberger who told him that Joseph's whereabouts were unascertainable and nothing more. In fact, as witnesses testified, the appellant knew that Joseph had been admitted to a drug treatment center on September 30, 1976 and that he, Rumberger, had authorized the payment of a reward to Joseph on October 5, 1976 and had approved the actual payment of the reward on October 15, 1976, the same day on which the appellant said Joseph's whereabouts were unascertainable. Conceding that Joseph had disappeared from the rehabilitation center shortly before October 15, 1976, the evidence nevertheless supports the allegation that the appellant withheld information which he should have supplied to the Assistant Attorney General.

The events surrounding the Danny Joseph cover-up also support the charge and finding that the appellant failed adequately to supervise subordinates, specifically the director of the Bureau's Reading, Pennsylvania office. The failure to enforce a regulation requiring that informant file memorandum reports be made and that copies of those reports be forwarded to Mr. Rumberger contributed to the lack of control and supervision over all informants and specifically Danny Joseph.

The Hopson allegation was directed to the appellant's failure to investigate assertions that a supervisor within the Bureau of Drug Control was corrupt. Evidence of witnesses tended to show that a drug user, Bill Boyd, told an undercover agent, Lawrence Kutney, that John Hopson, the appellant's assistant, used drugs and could be "taken care of" by Boyd's attorney. Kutney testified that he was concerned by the allegations, believed that they should be cleared up, and submitted a report describing the allegations. Richard Miller, Director of Criminal Enforcement within the Bureau of Drug Control, testified that he forwarded the sections of the report pertaining to Hopson to the appellant together with a memorandum stating, "[a]lthough the source of information can be deemed questionable, I feel the severity and sensitivity of the situation involving the Bureau and Mr. Hopson justifies an immediate investigation." Mr. Reiter testified that six months later, while reviewing the file of another case, he discovered Kutney's memorandum and asked Mr. Rumberger what steps he had taken to investigate the allegations. Mr. Rumberger told Mr. Reiter that no investigation had been conducted and that this was his fault. Mr. Reiter concerned by the six month delay, then decided that it would be necessary to have the Department of Justice conduct an independent investigation.

The Anonymous Letter was a four page press release describing problems in drug law enforcement in Pennsylvania, with proposed solutions. Mr. Rumberger himself testified that the Anonymous Letter was drafted by a number of people including some in his Bureau and that he participated in a meeting held in his office with at least some of the authors at which the contents of the letter were discussed. Mr. Reiter was not made privy to any of this although the letter was clearly intended to undermine him. The Anonymous Letter came to the attention of the then Attorney General, Robert P. Kane, who directed Messrs. Reiter and Rumberger to evaluate the Anonymous Letter and report to him. Mr. Rumberger's one page response, dated October 20, 1975, included the conclusion that: ''The problem areas as outlined are all serious, real and *accurately stated*. I have also determined that the attachment reflects the *unanimous opinion* of the Bureau staff.'' (Emphasis added.) At the hearing, the appointing authority presented evidence .that several members of the Bureau staff disagreed with the allegations in the letter and that Mr. Rumberger knew that his report to Attorney General Kane with respect to some of the alleged problems— for examples, that the Bureau was facing mass layoffs, that the Bureau and the Office of Drug Law Enforcement had become patronage tools, and that legal support personnel had no enforcement experience —was inaccurate, if not false.

The Commission's finding that appellant refused to accept the supervision of Mr. Reiter as head of drug law enforcement is related to the Anonymous Letter. A James Monahan, president of a Fraternal Order of Police lodge, testified that he attended a meeting with Rumberger, Hopson and Kutney during which ways to expose Mr. Reiter by means of a press release were discussed and that Rumberger promised,

without becoming directly involved, to cooperate in this effort.

Finally, the record contains sufficient evidence in support of findings relating to the appellant's attempt to impede a variety of drug enforcement programs initiated by Mr. Reiter.

The appellant argues that much of the conduct cited by the appointing authority to justify his removal occurred at a time long before and therefore too remote from the letter of dismissal, dated December 7, 1976, and hence is not to be relied upon. Mr. Rumberger's dismissal was based on a review by the Attorney General of his performance from January 1, 1975 until the date of the dismissal letter, December 7, 1976. The Commission, by its Chairman, agreed that events before January 1, 1975 should not be considered and there is no indication that they were. Under the circumstances, which included a six month moratorium during the period after January 1, 1975 imposed by the Governor on all drug program personnel actions, the Commission's adjudication cannot be considered to be based upon evidence too remote.

### ORDER

AND Now, this 11th day of April, 1979, the order of the State Civil Service Commission, dismissing the appeal of Zilian D. Rumberger, is affirmed.